

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

December 21, 1961

Honorable J. W. Edgar
Commissioner of Education
Austin, Texas

Opinion No. WW-1229

Re: Whether the Comptroller
of Public Accounts,
under the provisions
of Article 2675-1,
Vernon's Civil Statutes
(the Texas Vocational
Rehabilitation Act)
may legally issue
warrants for the pur-
chase of equipment
and materials for
post-training job
placement, and related

Dear Dr. Edgar:

question.

You have requested an opinion of this office on
the following two questions:

(1) "May the Comptroller legally issue
his warrant on the State Treasury for the pur-
chase of equipment and materials to be used
under the following conditions:

(1) Training tools, supplies and
placement equipment to be used in carrying
out the actual requirements of a job following
or after the client's training period.

(2) To establish a business enterprise
for self-employment as provided in the
regulations."

(2) "Legally, may the Vocational Rehabilita-
tion Division requisition and the State Comptroller
draw State warrant pursuant thereto for the pay-
ment of room and board not to exceed one month
in advance for clients in training who have
demonstrated their need, their inability to
provide such services for themselves?"

In your opinion request you correctly set out the
history and background material of the Vocational Rehabilita-
tion Program, which we quote in part:

"The State of Texas accepted the provisions of the Federal Vocational Rehabilitation Act (29 U.S.C.A., Chap. 4, part 401) when the 41st Legislature in 1929 enacted Article 2675-1, V.C.S., which is known as the Texas Vocational Rehabilitation Act. This Act provided for cooperation between the State Board for Vocational Education and the appropriate Federal Agency for the rehabilitation of and vocational education for severely physically disabled Texas citizens in accordance with the terms and conditions of the Federal Act. The primary purpose of such vocational rehabilitation, of course, is to provide the disabled person an opportunity to be useful and to become self-sustaining in our society.

"The Texas Act also authorized the State Treasurer to receive funds provided under the Act of Congress and to make disbursements therefrom upon order of proper authority charged with operation of the program.

"As indicated in Senate Bill 1, the current appropriation (S.J. Supp. Article IV, p. 189), the Program is supported and approximately sixty-five percent by Federal Funds and a required thirty-five percent with State matching funds. Federal funds as allotted are deposited in a special fund in the State Treasury subject to disbursement for the purposes appropriated.

"A basic condition to the certification of Federal funds to the State for vocational rehabilitation services is a State Plan found to meet the Federal requirements.

"The Federal-State relationship is currently set forth in a State Plan approved that is filed with the Office of Vocational Rehibilitation, U.S. Department of Health, Education and Welfare. . . . "

"The State Plan commits the State to compliance with the legal requirements of the Federal Act, accepts the grant-in-aid funds to the degree that the State is prepared to do so, and sets forth the basic policies and procedures for carrying on the work of Vocational Rehabilitation

in this state."

You then further quote in your request from the regulations governing the Vocational Rehabilitation Program adopted pursuant to "Section 7b of Public Law 565-83rd Congress, 2nd Session (29 U.S.C.A. Chap. 1V)" where in subpart A under the title "Definitions", "Vocational rehabilitation services" is defined to mean "any goods and services necessary to render a handicapped individual fit to engage in a remunerative occupation," including placement, tools, equipment, initial stocks and supplies, including equipment and initial stocks and supplies for vending stands. This includes the providing for such tools and equipment as are necessary to provide for the client to find placement in and enter an employment. The State under the plan then retains title to all tools and equipment so provided for a period of three years from the date of purchase, at which time the client may dispose of them as he wishes.

We quote further from your letter, which reads in part as follows:

". . . Vouchers for such training and placement tools and equipment are drawn against the Federal funds deposited to the credit of the State in its Treasury. Federal regulations require no accounting for such tools and equipment validly issued and necessary for purposes of the rehabilitation and placement of eligible clients.

". . . The preliminary training and rehabilitation of the client would be for nought and training wasted absent these added services necessary for placement or to assist and initiate the client in his own self-sustaining enterprise. This is no gift; it is a necessary part of the total program to rehabilitate and make a self-supporting member of society an eligible client.

"The Vocational Rehabilitation Division of this Agency has been informed that as of now the Office of State Comptroller will no longer issue warrants on the State Treasury on requisitions hereafter made for such after-training period services. . . ."

Section 51 of Article III of the Constitution of Texas reads in part as follows:

"The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; . . ."

Article 2675-1, Vernon's Civil Statutes, which is the statute governing the acceptance of federal funds from Congress for vocational rehabilitation, reads in part as follows:

"Section 1. The Legislature of Texas does hereby accept the provisions and benefits of an Act of Congress passed June 2, 1920, amended June 5, 1924, entitled: 'An Act to provide for the promotion of Vocational Rehabilitation of persons disabled in industry or otherwise, and their return to civil employment.'

"Sec. 2. The Treasurer of Texas be, and he is hereby authorized and empowered to receive the funds appropriated under said Act of Congress, and is authorized to make disbursements therefrom upon the order of the State Board for Vocational Education. The State Board of Vocational Education is empowered and instructed to co-operate with the terms and conditions expressed in the Act of Congress aforesaid.

". . ."

The current legislative appropriation of vocational rehabilitation funds may be found in the General Appropriations Bill, Senate Bill 1, Acts of the 57th Legislature, 1st Called Session (1961).

To summarize the foregoing, the Comptroller of Public Accounts has held that the after-training period provision of equipment, tools and services under the Vocational Rehabilitation Program violates Sec. 51 of Article III of the Constitution, and now refuses to issue warrants to cover the cost of such items. Your first question deals with whether such action on the Comptroller's part is legally correct.

In speaking of Section 51 of Article III of the Constitution of Texas, the Supreme Court, in the case of State v. City of Austin, 160 Tex. 348, 331 S.W.2d 737 (1960) said in part:

". . . The purpose of this section . . . of
the Constitution is to prevent the application of
public funds to private purposes. . . . See Byrd
v. City of Dallas, 118 Tex. 28, 6 S.W.2d 738."
(Emphasis supplied)

It is well settled in this State that when a law
duly enacted is attacked as unconstitutional, it is presumed
to be valid and doubts as to its unconstitutionality will
always be resolved in favor of constitutionality, and a
construction will be given, if reasonable, that will uphold
it. Southern Pine Lumber Co. v. Newton County Water Supply
District, 325 S.W.2d 724 (Civ. App. 1959, err. ref., n.r.e.).
The fundamental purpose in construing constitutional provisions
is to ascertain and to give effect to the intent of the framers
and the people who adopted it. Deason v. Orange County Water
Control and Improvement District No. One, 151 Tex. 29, 244
S.W.2d 981 (1952). The purpose and intent of the framers of
Section 51 of Article III has been found by the Court to be
the prevention of the application of public funds to private
purposes. State v. City of Austin, supra.

Thus it appears that your first inquiry resolves
itself into a question of whether or not the providing of
these after-training-period tools, equipment, etc., under the
Federal and State statutes, rules, and regulations, which you
quote and refer to in your letter, is logically within the
meaning of applying "public funds to a private purpose." We
think that it is not.

In Attorney General's Opinion V-1067 (1950), this
office said in part:

"In determining whether an expenditure of
public moneys constitutes a gift or a grant of
public moneys, 'the primary question is whether
the funds are used for a "public" or a "private"
purpose. The benefits of the State from an ex-
penditure for a "public purpose" is in the nature
of consideration and the funds expended are there-
fore not a gift even though private persons are
benefited therefrom.'"

In deciding what is a public purpose, as opposed to
a private purpose, it has been held that a contribution by
a state, or any subdivision thereof, by way of taxation or

any public moneys, to retirement or disability funds or programs is not a donation for a "private purpose." Bedford v. White, 106 Colo. 439, 106 P2d 469 (1940). The determination of what constitutes a "public purpose" for which a state may expend moneys has been held to be primarily a legislative function subject to review by the courts when abused, and the determination of the legislative body of the matter has been held to be not subject to be reversed except in instances where such determination is palpably and manifestly arbitrary and incorrect. State ex rel. McClure v. Hagerman, 155 Ohio St. 320, 98 N.E.2d 835 (1951). The Legislature of this State has clearly indicated by its adoption of this program that it is within the realm of the "public purpose" and it is hard to imagine that the determination that the complete vocational rehabilitation program as outlined is a "public purpose" would be held by the courts to be "manifestly incorrect and arbitrary."

When the Legislature of this State decided to take on the Vocational Rehabilitation Program, we feel sure that it realized that mere training would not be enough, and that to fulfill all of the objectives desired, the "clients" would have to be provided with the post-training period means to earn a livelihood and become useful citizens. To say that "public purpose" stops short of this complete rehabilitation is, we think, unrealistic. In Attorney General's Opinion O-592 (1944) this office held that the providing of such equipment, etc., as here in question under vocational rehabilitation for the blind was perfectly valid and legal. We find no reason to change this conclusion in this present situation.

Consequently, you are informed that it is the opinion of this office that in answer to your first inquiry, the Comptroller of Public Accounts may legally issue his warrant on the State Treasury for the purchase of equipment and material under the named conditions for post-training period vocational rehabilitation.

In regard to your second inquiry, you ask if the Vocational Rehabilitation Division may legally requisition and the State Comptroller draw warrants pursuant thereto for the payment of room and board not to exceed one month in advance for clients in training who have demonstrated their need and their inability to provide such services for themselves.

Since "maintenance" is a necessary adjunct to vocational rehabilitation under the State-Federal program, a "public

purpose" function, it is our opinion that payments for room and board one month in advance legally can be made when the client showing need is placed in training. The Vocational Rehabilitation Statutes, regulations, etc., do provide for necessary "maintenance" during rehabilitation. In Attorney General's Opinion V-1067, supra, we held that where a "public purpose" was involved, payment of rental in advance does not in any manner create the customary relationship of borrower and lender, and that such a payment is not a lending of the State's credit as prohibited under Section 51, Article III of the Constitution of Texas. Consequently, your second question is answered in the affirmative.

### SUMMARY

(1) The Comptroller of Public Accounts may legally issue his warrant on the State Treasury for the purchase of equipment and material under the named conditions for post-training vocational rehabilitation.

(2) The Comptroller of Public Accounts may legally issue a warrant pursuant to a Vocational Rehabilitation Division requisition for the payment of room and board one month in advance for clients who have demonstrated their need and inability to provide such services for themselves.

Very truly yours,

WILL WILSON
Attorney General of Texas

By Eugene B. Smith
Assistant

EBS:dhs:kh

APPROVED:
OPINION COMMITTEE
W. V. Geppert, Chairman

Morgan Nesbitt
H. Grady Chandler
Pat Bailey
J. C. Davis

REVIEWED FOR THE ATTORNEY GENERAL
BY: Houghton Brownlee, Jr.